743 P.2d 1003
**STATE of Idaho, Plaintiff-Respondent,**

v.

**Lynn Calloway SNAPP,
Defendant-Appellant.**

**No. 16694.**

Court of Appeals of Idaho.

Sept. 30, 1987.

Petition for Review Denied Jan. 25, 1988.

Alan E. Trimming, Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. by Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

We are asked to decide whether two prison sentences imposed for sexual abuse of children should be reduced under I.C.R. 35. Our examination of this issue also requires us to consider the problem of parole eligibility where consecutive sentences have been imposed.

The appeal comes to us with the following procedural history. Lynn C. Snapp was convicted by a jury on three counts of sexual abuse. Each count represented a felony under I.C. § 18–1506. On two of the counts, Snapp received indeterminate sentences of five years each, to be served consecutively.[1] On the third count, he received a withheld judgment upon condition that he successfully complete a period of probation after serving the two prison sentences. Snapp moved for a reduction of the prison sentences under I.C.R. 35. The motion was denied. For reasons explained below, we affirm.

The facts surrounding the offenses need not be set forth at length. They are fully described in a prior decision by our Supreme Court. See State v. Snapp, 110 Idaho 269, 715 P.2d 939 (1986) (hereinafter cited as Snapp I ). For our purposes, it is sufficient to say that the offenses consisted of various physical acts and other sexual conduct performed upon, or directed toward, Snapp's own children. His parental relationship with these children was later terminated. The Supreme Court in Snapp I held that the prison sentences did not represent an abuse of the district judge's discretion.

In support of his motion to reduce these sentences under Rule 35, Snapp offered

proof that his conduct was good, and that he earned a high school equivalency certificate, while in prison. He also submitted several letters from citizens in the community. These letters, supplemented by testimony at a hearing on the Rule 35 motion, stated that Snapp possessed a generally good character, that he would be gainfully employed if released from prison, and that upon release he would receive counseling through a social services program in his church. Nevertheless, the district judge denied Snapp's motion, stating simply that "[c]onsidering the nature of the crime and circumstances surrounding its commission, I still feel the sentences were all appropriate...."

I

When we review the denial of a Rule 35 motion, we begin with the understanding that such a motion is addressed to the sound discretion of the lower court. State v. Arambula, 97 Idaho 627, 550 P.2d 130 (1976). The motion essentially is a plea for leniency which may be granted if the sentence originally imposed was, for any reason, unduly severe. State v. Lopez, 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). The judge may consider facts presented at the original sentencing as well as any other information concerning the defendant's rehabilitative progress in confinement. State v. Torres, 107 Idaho 895, 693 P.2d 1097 (Ct.App.1984). On appeal, we similarly examine the record of the original sentencing, together with information subsequently presented in support of the Rule 35 motion. State v. Yarbrough, 106 Idaho 545, 681 P.2d 1020 (Ct.App.1984). The criteria for evaluating a judge's refusal to reduce a sentence are the same as those applied in determining whether the original sentence was excessive. See State v. Toohill, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). The

---

1. The district judge retained jurisdiction under both sentences for 120 days under I.C. § 19–2601(4). It appears that jurisdiction was retained for the purpose of assuring Snapp's enrollment in the sex offenders' program offered by the Board of Correction at the North Idaho Correctional Institution. After receiving a report from NICI, the district court relinquished its jurisdiction, leaving the consecutive sentences in full force.

judge's ruling will not be disturbed unless an abuse of discretion is shown.[2]

■ Here, the original sentencing is contained in the record of *Snapp I.* We take judicial notice of that record.[3] The presentence investigation report indicates that Snapp had a prior record of juvenile offenses and misdemeanors, but no felony convictions. The report discloses that Snapp's sexual misconduct had a long history and a profoundly disturbing effect upon his family. The report is supplemented by a psychological evaluation. The psychologist found a substantial risk that Snapp's sexual misconduct would be repeated in the future. This finding was based in part on Snapp's denial that he had engaged in any wrongful behavior—a denial which Snapp continued to maintain even during his imprisonment.

■ Viewing the record as a whole, we cannot say that the district judge abused his discretion in declining to reduce the prison sentences. Snapp's good behavior in a highly structured institutional setting does not wholly alleviate legitimate concerns about his behavior if granted an early release. Neither does the availability of probation under the withheld sentence dispel this concern. Moreover, the church's offer of counseling—though generous and laudable—has not been accompanied by any showing of specific programs for, or expertise relating to, sex offenders.

We acknowledge that these reasons for upholding the judge's decision go beyond his own terse statement when he disposed of the Rule 35 motion. We strongly encourage judges to explain their reasons for denying such motions. However, our Supreme Court has held that judges are not *required* to give *any* reasons for their sentencing decisions. *State v. Nield,* 106 Idaho 665, 682 P.2d 618 (1984). Unless and until the Supreme Court changes its view on this fundamental question of judicial policy, we will be constrained to draw our own impressions from the record, as we have here, and to affirm what we infer to be a reasonable exercise of the lower court's discretion in pronouncing, or in refusing to reduce, the sentence under review. *State v. Thomas,* 112 Idaho 1134, 739 P.2d 433 (Ct.App.1987).

## II

In upholding the denial of Snapp's motion to reduce his prison sentences, we deem it important that the judge made those sentences indeterminate rather than fixed. He thereby took account of Snapp's rehabilitative potential and preserved the possibility of eventual parole. However, Snapp has alleged in his Rule 35 motion, and he has argued in this appeal, that the Commission for Pardons and Parole will require him to "top out" the first five-year sentence, and to serve part of the second sentence, before receiving parole consideration. Thus, Snapp contends that the first sentence will be administered, in effect, as though it were fixed.

■ The record before us contains no evidentiary showing that the Commission actually has taken this position. More fundamentally, the law does not require such a position to be taken. We concede that the subject of parole is burdened with conceptual problems where consecutive, indeterminate sentences are imposed. When an inmate has served as much of his first sentence as the Commission for Pardons and Parole believes he ought to serve in confinement, the Commission naturally will wish to activate the second sentence so

---

2. The state has argued that where, as here, the sentences have survived a direct appeal, the standard of review under Rule 35 should be even more deferential—i.e., a "gross" abuse of discretion. *See United States v. Distasio,* 820 F.2d 20 (1st Cir.1987). We need not decide this question today because we conclude, *infra,* that the judge's ruling in this case can be sustained under the customary standard of abuse of discretion. We note, however, that we are not necessarily convinced that a meaningful, principled difference exists between an abuse and a "gross" abuse of discretion. Moreover, where new information is presented in support of a Rule 35 motion, the proceeding cannot be viewed as a mere replay of the original sentencing.

3. Although judicial notice would be sufficient, the parties have taken the additional step of stipulating to make the prior record part of the record in this appeal.

that an appropriate period of confinement under that sentence can begin. When the total appropriate period of confinement has been served, the Commission ordinarily will desire to place the inmate on parole. However, in cases arising prior to Idaho's Unified Sentencing Act, the Commission lacks an explicit statutory mechanism for accomplishing this result.[4]

There are three alternative approaches to this dilemma. Each of them is pragmatically attractive, though conceptually imperfect. The cleanest conceptual approach focuses upon commutation, a constitutionally recognized form of executive clemency. This power is delegated by statute to the Commission on Pardons and Parole. I.C. § 20–210. Where consecutive sentences have been imposed, the Commission may keep an inmate in prison for the total period of confinement which the Commission deems appropriate for both sentences. Then the Commission may commute the sentences from consecutive to concurrent, or may commute the first sentence to time served, and then place the inmate on parole. One problem with this approach is that commutation is an administratively cumbersome procedure. See I.C. § 20–213. Another, more theoretical problem is that frequent use of the commutation power to alter sentences may undermine the principle of comity which requires one branch of government (the executive) to minimize its intrusions upon decisions made by another branch (the judiciary).

The second approach focuses on discharge. This is a power implicitly granted by the judiciary to custodial authorities whenever an indeterminate sentence is imposed. Where two sentences are consecutive, the Commission may hold the prisoner for a total period of confinement appropriate to both sentences, then discharge the first sentence and release the prisoner on parole from the second sentence. Such a suggestion was made by our Court in *State v. Saykhamchone,* 112 Idaho 1128, 739 P.2d 427 (Ct.App.1987). An arguable difficulty with this approach is that some statutes mentioning discharge also refer to the existence of parole before discharge. *See, e.g.,* I.C. §§ 20–233, 238, 239. However, this difficulty evaporates when discharge is understood to be more than a mere creature of the statutes that refer to it. Rather, it is an inherent and essential component of any indeterminate sentence. The statutes mentioning discharge are silent with respect to consecutive sentences. They express no legislative intent to limit the discharge power where such sentences have been imposed.

A third alternative focuses on the parole power itself. It envisions placing the inmate on parole from the first sentence when an adequate period of confinement on that sentence has been served. The second sentence then is deemed to be activated. The inmate is given a "dual status," remaining in prison on the second sentence while serving parole on the first. When an adequate period of confinement on the second sentence has been served, the inmate may be placed outside the prison on parole from one or both of the sentences. Conceptually, this is the most troublesome of the three approaches. It maintains consecutive sentences in name but it creates concurrent sentences in effect. It is inconsistent with the principle that parole does not change or terminate a sentence; it simply alters the place where a sentence is served. Nevertheless, this approach is favorably discussed in a recent Attorney General's opinion. *See* Op.Idaho Att'y Gen. No. 87–9 (August 19, 1987). *Compare State v. Kaiser,* 108 Idaho 17, 696 P.2d 868 (1985) (discussing parole under enhanced sentences).

Regardless of which approach ultimately is adopted by the Commission for Pardons and Parole, it is clear that a pragmatic solution is readily available for any perceived problem of giving timely parole consideration to an inmate serving consecutive, indeterminate sentences. Accordingly, we reject Snapp's argument that poten-

---

**4.** The Unified Sentencing Act applies to crimes committed on or after February 1, 1987. The Act contains explicit statutory authority to combine the minimum periods of confinement prescribed in consecutive sentences, and then to place the inmate on parole during the ensuing indeterminate period(s). *See* I.C. § 19–2513, as amended in 1986.

tially improper administration of his prison sentences requires judicial intervention at this time, under the guise of a Rule 35 reduction.

The district court's order, denying Snapp's motion to reduce his prison sentences, is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.