830 P.2d 522

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Asencion YBARRA, Defendant–Appellant.**

**No. 19475.**

Court of Appeals of Idaho.

May 6, 1992.

Swafford Law Office, Idaho Falls, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SILAK, Judge.

Asencion Ybarra pled guilty to four counts of delivery of a controlled substance, two counts of failure to affix a drug stamp, one count of conspiracy to possess a controlled substance with the intent to deliver, and one count of racketeer-ing. For his conviction on these eight counts, Ybarra received eight separate sentences, six of which were to be served concurrently, and two consecutively. Under these sentences, Ybarra's minimum period of incarceration is twenty years. Ybarra was also assessed $115,500 in fines and restitution. Subsequently, Ybarra moved the court, pursuant to I.C.R. 35, to reconsider his sentences, alleging that they were excessive. The district court, after receiving briefs and arguments from counsel, denied the motion. Ybarra now appeals the denial of his motion, and, for the reasons stated below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On several occasions between August and November, 1990, Ybarra sold drugs to a confidential informant (CI) who was working for the police. The drug transactions, and the negotiations leading up to them, were either tape recorded, video recorded, or both. A number of these transactions took place at the El Toreo Bar, which Ybarra owned and operated. In November, 1990, Ybarra was arrested and charged with the following twenty-two counts of drug-related offenses: Counts I through III, delivery of a controlled substance, cocaine, I.C. § 37–2732; Count IV, delivery of a controlled substance, marijuana, I.C. § 37–2732; Counts V through XX, failure to affix drug stamps, I.C. §§ 63–4205 and –4206; Count XXI, conspiracy to possess a controlled substance with the intent to deliver, I.C. § 37–2732; and count XXII, racketeering, I.C. §§ 18–7803(20) and –7804. All of the twenty-two offenses were charged as felonies.

Pursuant to a plea agreement, Ybarra pled guilty to Counts I–VI, XXI, and XXII. The state dismissed the remaining fourteen counts, each of which charged Ybarra with failure to affix a drug stamp. After Ybarra pled guilty to the eight counts stated, the district court ordered a presentence investigation (PSI) and scheduled a sentencing hearing. Ybarra was also granted permission by the court to hire an investi-

gator to conduct a separate PSI on his behalf.

On June 5, 1990, after the state's and the defendant's PSI's were submitted to the parties and the court, a sentencing hearing was held before the district court. At the hearing, Ybarra represented that he was not really a drug dealer. He claimed that his involvement with drugs was limited to the incidents charged, and that in those incidents he was only acting as a "go between" for a personal friend, the CI, because this friend had a drug problem and he, through his work in the bar, happened to know where she could get some drugs.

Ybarra also offered the testimony of Robert Moran, the presentence investigator hired by Ybarra to conduct a separate presentence investigation. Moran testified that he felt Ybarra "could function on probation," and that incarceration in "the state penitentiary might be a little severe."

The state, on the other hand, produced evidence through witnesses and audio and video tapes to show that Ybarra dealt in large quantities of drugs. It is undisputed that Ybarra does not, himself, use drugs. The record indicates that Ybarra's drug dealings were solely motivated by the desire to make money. The state's evidence showed that Ybarra sold an ounce of cocaine to the CI on four separate occasions between August and November 1990, that Ybarra knew the CI was reselling the cocaine to co-workers at her place of employment, and that the CI told Ybarra that she would buy more cocaine from him depending on how fast she could sell the cocaine she had already purchased from him.

The state introduced evidence showing that an ounce of cocaine, the amount sold to the CI in each transaction, is a large quantity of cocaine. The state's evidence showed that the standard amount of cocaine transacted on the street is one gram for $100, and that an eighth of a gram is a standard amount consumed by cocaine users. In this case, the CI was buying an ounce (28 grams) of cocaine from Ybarra for between $1,300 and $1,500. The state also introduced testimony from a witness who testified that between July and October, 1990, she (the witness) purchased an ounce of cocaine from Ybarra on six separate occasions. This witness further testified that she did not use cocaine, but simply sold it for profit. The evidence also showed that Ybarra was consistently able to supply his buyers with an ounce of cocaine on twenty-four hours notice, and that he was able to deal in pounds of marijuana on short notice.

Other evidence supports the conclusion that Ybarra is a "big" drug dealer, at least by eastern Idaho standards. The taped conversations between Ybarra and the CI show that Ybarra was familiar with the process of pricing, packaging, and distributing drugs. The amount of drugs, the type of packaging, and the unadulterated condition of the drugs confiscated by the state in this case indicate that Ybarra obtained the drugs at a point close to their source. The taped conversations also reveal that Ybarra was contemplating a trip to Mexico to pick up more drugs himself, because then he could get them at half the price he was being charged by his suppliers. Ybarra even asked the CI if she would like to accompany him on this trip. There is also evidence in the record to show that Ybarra bought cocaine by the kilo, and that he was going to sell at least one person a half kilo of the drug. He also indicated in one of the taped conversations that he was "sitting on thirty pounds of marijuana."

At the sentencing hearing, the state asserted that Ybarra had failed to comply with one of the terms of the plea agreement, which was to cooperate with the state's further investigations into drug trafficking in Idaho. The state argued that Ybarra, contrary to the agreement, refused to meet with investigators or cooperate with any investigations. Finally, the state submitted evidence showing that Ybarra was both unremorseful and untruthful about the nature and extent of his involvement in drug trafficking. Based on this evidence, the state recommended that Ybarra be sentenced to twenty-five years with a ten-year minimum period of confinement and a $25,000 fine on each of the

cocaine delivery charges. On the marijuana delivery charge, the state recommended the maximum five-year fixed term of confinement to run consecutive to the time served on the sentences for Counts I, II, and III. The state also recommended a $5,000 fine. The state did not recommend specific sentences on the drug stamp, conspiracy, and racketeering counts, but asked the court, based on the serious nature of the crimes, to impose the penalties which the legislature set for those crimes in order to send the message that those who conspire to deal drugs and who do so as a business for profit will be punished harshly. The state also asked the court to order that restitution be paid to the state in the amount of $15,500.

At the conclusion of the sentencing hearing, the district court imposed the following sentences:

Counts I–III    Delivery of a Controlled Substance, Cocaine:
     10 fixed/15 indeterminate    $25,000 (Concurrent)
     10 fixed/15 indeterminate    $25,000 (Concurrent)
     10 fixed/15 indeterminate    $25,000 (Concurrent)

Count IV    Delivery of a Controlled Substance, Marijuana:
     5 fixed    $5,000 (Concurrent)

Counts V & VI    Failure to Affix a Drug Stamp:
     1 fixed/ 3 indeterminate    (Concurrent)
     1 fixed/ 3 indeterminate    (Concurrent)

Count XXI    Conspiracy to Possess a Controlled Substance with the Intent to Deliver:
     5 fixed/10 indeterminate    $10,000 (Consecutive)

Count XXII    Racketeering:
     5 fixed/ 9 indeterminate    $10,000 (Consecutive)

Restitution:    $15,500

These sentences essentially amount to three separate sentences. Ybarra must first complete the sentence which is comprised of the six concurrent sentences, amounting to twenty-five years with ten years fixed. He must then serve his first consecutive sentence of fifteen years with five years fixed, followed by his second consecutive sentence of fourteen years with five years fixed. Assuming that the indeterminate portions of the first two sentences each are commuted upon completion of the associated fixed portions,[1] Ybarra will serve a minimum of twenty years in prison, followed by the nine-year indeterminate period of the last sentence. The fines and restitution imposed amount to $115,000. These sentences approximate the sentences recommended by the state.

Ybarra subsequently filed a motion under I.C.R. 35, asking the district court to reconsider his sentences on the grounds of excessiveness. Additionally, Ybarra asserted that he wanted to clarify the issue about his cooperation with the state's investigators which had been raised by the state at the sentencing hearing. Ybarra's counsel argued at the hearing on his Rule 35 motion that since the time of sentencing Ybarra had come forward and disclosed everything he knew about Idaho drug trafficking to the state's investigators, and, thus, Ybarra had complied with the terms of the plea agreement.

In response to this point, the state argued that Ybarra did not cooperate with the state until after he had been sentenced by the court, and thus learned that he was going to prison for a long time. The state pointed out that prior to sentencing, Ybarra remained uncooperative, and that it was not until he received a stiff sentence for his

1. For discussion of commutation process with respect to consecutive sentences, see State v. Alberts, 121 Idaho 204, 824 P.2d 135, 137–38 (Ct.App.1991).

crimes that he changed his mind and decided to cooperate with the state, hoping to obtain the leniency sought in his Rule 35 motion. The state further argued that by the time Ybarra cooperated with the state investigators his assistance was no longer of use to the police. After receiving briefs and argument from counsel, the district court denied Ybarra's motion for reduction of sentence.

## ISSUE AND STANDARD OF REVIEW

The sole issue before us is whether Ybarra's sentences are excessive. Where a sentence is not challenged as to its legality, a Rule 35 motion is a plea for leniency, addressed to the sound discretion of the sentencing court. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App. 1987). We review the denial of a Rule 35 motion to determine from the record whether the facts, if any, presented in connection with the Rule 35 motion show that the district court abused its discretion in failing to grant the leniency requested. *State v. Wright*, 114 Idaho 451, 452, 757 P.2d 714, 715 (Ct.App.1988).

The criteria for evaluating a judge's refusal to reduce a sentence pursuant to a Rule 35 motion are the same criteria we consider in determining whether the original sentence was reasonable. *State v. Snapp*, 113 Idaho 350, 351, 743 P.2d 1003, 1004 (Ct.App.1987). In *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App.1982), we explained that:

> [A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case.

*Toohill*, 103 Idaho at 568, 650 P.2d at 710. In determining whether a sentence is longer than necessary to achieve these goals, and thus unreasonable, we consider the actual term of confinement imposed in light of the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Shideler*, 103 Idaho 593, 594, 651 P.2d 527, 528 (1982); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). The appellant bears the burden of showing that his sentence is unreasonable in light of these criteria. *Wright*, 114 Idaho at 453, 757 P.2d at 716. This court will not substitute its own view for that of the sentencing judge where reasonable minds might differ. *Toohill*, 103 Idaho at 568, 650 P.2d at 710.

## ANALYSIS

Because, in reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement, I.C. § 19–2513; *State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989), we view Ybarra's actual term of confinement as twenty years. Thus, in light of the facts and law recited above, we must determine whether a sentence of twenty-years confinement is unreasonable in light of the nature of Ybarra's offenses, his character, and the sentencing objectives outlined in *Toohill*. We note, in this regard, that Ybarra has regrettably failed to supply this Court with a copy of the PSI reports submitted in this case. As we have stated in prior cases, the Court is handicapped when it attempts to review a sentence without this vital information.

We first consider Ybarra's offenses. Ybarra has been convicted of eight drug-related felonies. Our legislature has seen fit to classify four of the crimes Ybarra pled guilty to as major crimes which are punishable by a fixed term of life in prison and/or a $25,000 fine. It is also very significant to note that Ybarra did not commit these crimes on a small scale, rather, he was found to be a large scale drug supplier in the community. The tremendous waste, hurt and tragedy that exists in our society because of drug trafficking and drug abuse, and, thus, the serious nature of Ybarra's offenses, is indisputable.

The record also reflects, however, that Ybarra felt little or no remorse for the consequences of his criminal conduct. Ybarra's principal regrets centered on the personal consequences of his apprehension,

which had to do with the loss of his business, his reputation, and his standing within his family and the community. The district court considered it to be of major significance that Ybarra exhibited almost complete lack of remorse for his crimes.

Another indication of Ybarra's character which is borne out by the evidence in the record is his unwillingness to be honest with the district court, the prosecutor, and with the presentence investigators. In spite of the overwhelming evidence to the contrary, Ybarra continued to represent to the court that he had merely gotten caught in the middle of an isolated drug transaction, and that he was not really selling drugs, but just a "go between" for the real drug users and pushers. Ybarra refused to cooperate and assist the state in its drug investigations, contrary to his pre-plea representations to prosecutors. It was not until after he was sentenced to a long prison term, and before the hearing on his Rule 35 motion, that Ybarra decided to cooperate with the state's investigations.

The record shows that prior to imposing sentence upon Ybarra, the district court carefully reviewed the criteria which govern the sentencing decision in Idaho. The district judge thoroughly reviewed the evidence and judiciously applied legal standards to the facts of the case. Among other facts, the district court noted that Ybarra had committed at least eight major felonies, and is "someone who is seriously and substantially in the business of selling and pushing drugs in this community." The court also observed that although he pled guilty to the charges, Ybarra steadfastly minimized his involvement in drug trafficking, falsely denying involvement in any drug activities other than the ones charged. The court concluded that Ybarra was not credible, that he was involved in drug trafficking operations significantly over and above those that he had acknowledged in court, and that he had withheld information concerning drug sources and other activities that he and others in the community were involved in.

In reaching its conclusion, the district court stated that in light of the circumstances of the case the major sentencing objectives to be achieved were protection of society, deterrence of the defendant and the public, and punishment for wrongdoing. The court did not consider the possibility of rehabilitation to be a major objective because Ybarra was not chemically dependent, and his lack of honesty, responsibility, and remorse indicated that the possibility of rehabilitation was of lesser weight than the need to protect society, deter future offenses, and punish wrongdoing.

When we consider the serious nature of Ybarra's offenses, his unwillingness to interact with the court and the state in an honest and forthright manner, his unwillingness to accept responsibility for his crimes, and his lack of remorse, we conclude that the sentence imposed by the district court is a reasonable measure to promote the public's interests in protection of society, deterrence of future crimes, and retribution.

## CONCLUSION

Based on a thorough review of the record, we conclude that the district court did not abuse its discretion when it imposed Ybarra's sentences. Rather, the court carefully considered the proper objectives to be achieved by sentencing, and imposed a sentence that was reasonably necessary to achieve those objectives in light of the facts of the case. The district court denied Ybarra's Rule 35 motion for the same valid reasons it imposed the original sentence. Accordingly, the district court's denial of Ybarra's Rule 35 motion for reconsideration is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.