804 P.2d 1369

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steve WADDELL, Defendant–Appellant.**

No. 18140.

Court of Appeals of Idaho.

Feb. 5, 1991.

Van G. Bishop, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent. Jack B. Haycock argued, Boise.

SWANSTROM, Judge.

Steve Waddell pled guilty to second degree murder for the stabbing death of his high school sweetheart. The district judge sentenced Waddell to a minimum period of confinement of twenty years followed by an indeterminate period of confinement not to exceed life. Waddell appeals, contending that his sentence is unjust because the judge erred: (1) by ignoring Waddell's potential for rehabilitation; (2) by not mentioning the sentencing guidelines before imposing sentence and by not following the prosecutor's sentencing recommendation;

and (3) by considering letters and testimony from the victim's family prior to sentencing. For reasons explained below, we affirm the judgment of conviction.

We begin by recounting the events leading up to the murder. Steve Waddell and his girl friend, Michelle Sebree, were seniors at Vallivue High School. Sebree was a junior and Waddell, a senior. The couple had been dating each other exclusively for about two and a half years. The relationship was intimate, and the couple had discussed the possibility of marriage. Michelle's parents were concerned that the relationship had become too serious too soon, and they encouraged her to date other people. However, Sebree continued to date Waddell through the end of school in 1988.

In June of 1988, Sebree was invited to attend a writing and debate symposium at the College of Idaho campus in Caldwell, Idaho. While at the symposium, Sebree tried to end her relationship with Waddell. This led to an argument in a campus parking lot when the couple apparently broke up. Early the next morning, Waddell stopped to visit Sebree at her dorm room, then left. Following his visit, Sebree began dressing and preparing herself to meet another young man for breakfast. Sebree had met the young man and started seeing him during the symposium.

The young man and Sebree's roommate were playing cards in Sebree's dorm room while Sebree got ready. They saw Sebree walk out of her room and down the hall. Minutes later, they heard screams. The young man and two young women who were staying in the dorm rushed out into the hall and began searching for the source of the screams. They found Sebree lying on her back in the corner of an empty dorm room with blood on her body. She was trying to fend off Waddell who was stabbing her in the chest with his knife. Sebree died as a result of these stab wounds.

Waddell then fled the dorm and left the campus. He was arrested shortly there-

after at the hospital, where his stepfather had driven him after Waddell admitted to taking an overdose of allergy pills and heart medication. Apparently, Waddell had taken the medication the morning of the stabbing. According to Waddell, he had attempted to overdose on the medication in order to show Sebree just how much he loved her. Waddell asserts that the drugs put him in a "fugue state" of mind,[1] so that he was not consciously aware of his actions until he woke up in the hospital.

Waddell was charged with first degree murder and with an enhancement charge for the use of a deadly weapon in the commission of a crime. The state later amended the charge to second degree murder and Waddell pled guilty to the amended charge. He was given a life sentence with a minimum prison term of twenty years. Waddell filed a motion to reduce his sentence; however, this motion was denied. Waddell then filed this appeal from the judgment of conviction, but he is not appealing the denial of his Rule 35 motion.

Waddell asks this Court to vacate his sentence and remand the case to the district court for resentencing. He argues that, on remand, the district court should impose a sentence with a minimum fixed term of ten years followed by an indeterminate life sentence. Waddell contends that this type of sentence would allow the Idaho State Board of Correction more discretion in determining when and if he is fit to return to society.

■ We begin by first examining the standard of review for a sentencing case. A sentence within the statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Ramsey*, 115 Idaho 717, 769 P.2d 594 (Ct.App.1989). Therefore, we will not disturb the district court's sentencing decision unless the sentence is unreasonable in light of the facts shown.

*State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). Second degree murder carries with it a maximum penalty of life in prison. I.C. § 18–4004. Waddell's sentence of a fixed twenty years followed by an indeterminate life sentence is within the statutory limits and therefore within the bounds of discretion.

■ The reasonableness of a sentence is determined primarily by examining the minimum length of time an inmate must spend in prison. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Here, Waddell must spend twenty years in prison before being eligible for parole. When considering whether twenty years of incarceration is reasonable for second degree murder, we look to the substantive sentencing goals announced in *Toohill*. These goals include: the protection of society, retribution, deterrence and rehabilitation. A sentence is unreasonable, and an abuse of discretion, if the sentence is longer than necessary to accomplish any or all of these goals. *Id.* In addition, when evaluating the reasonableness of a sentence, we concentrate on the nature of the offense and the character of the offender. *State v. Amerson*, 113 Idaho 183, 742 P.2d 438 (Ct. App.1987).

■ The killing of Michelle Sebree was especially tragic. The autopsy revealed that Michelle received not less than ten stab wounds to her body. Several of these wounds punctured vital organs of her body. For example, the left and right ventricles of her heart were punctured and the jugular vein in her neck was severed. The seriousness of the wounds caused one nurse to comment: "Whoever did that knew exactly what they were doing." This remark is troubling, because the record reveals that Waddell did have prior training as a paramedic.

As for Waddell's character, the record shows that he was raised in a good family

---

**1.** WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 918 (3D ED.1976) includes this meaning of the word "fugue": "a pathological disturbance of the consciousness during which the patient performs acts of which he appears to be conscious but of which on recovery has no recollection."

environment and that he was well liked by the people in the community. In fact, several people wrote letters to the court on his behalf. In addition, Waddell had no criminal record and no known propensity to commit violence. Waddell appeared to be a normal nineteen year-old.

However, his letters introduced at trial and the testimony showed that Waddell did have a volatile personality. Several of the medical experts stated that Waddell was immature, possessive and extremely jealous of anyone who came near Sebree. Waddell's possessive personality becomes more apparent in his letters to Sebree. Waddell was obsessed with the fear that Sebree might go out with another man. In one letter, Waddell stated that he could not live without Michelle, and that if she left him, he would kill her, and then himself. Waddell's possessive personality caused one medical expert to state, based on an evaluation of Waddell, that it was possible that Waddell might murder again. He testified that Waddell might repeat this violent behavior pattern over and over again in future relationships with women.

■ Waddell contends that the district judge abused his discretion because he did not seriously consider Waddell's ability to be rehabilitated. Waddell argues that the judge ignored his rehabilitation potential because he was outraged when Waddell told him an incestuous relationship existed between Michelle Sebree and her father, and because Waddell would not take responsibility for killing Michelle Sebree. He argues that the record shows the court improperly relied upon these remarks to reject rehabilitation in favor of retribution and deterrence.

However, we conclude that the judge properly considered the sentencing goal of rehabilitation. A court may consider a denial of guilt in determining whether a defendant has taken the first necessary step toward rehabilitation. *State v. Nooner,* 114 Idaho 654, 759 P.2d 945 (Ct.App.1988). *See also Stedtfeld v. State,* 114 Idaho 273,

755 P.2d 1311 (Ct.App.1988) (although a refusal to admit guilt usually should not be given much weight, a sentencing judge may consider the issue when weighing the defendant's rehabilitation potential). Here, because each remark tended to show that Waddell was attempting to minimize his role in the killing, we believe the district court judge was entitled to consider these statements in evaluating Waddell's potential for rehabilitation.

In any event, a sentence need not serve all the sentencing goals. In appropriate cases, one may be sufficient. *Simons v. State,* 116 Idaho 69, 773 P.2d 1156 (Ct.App. 1989). In this case, it is evident from the record that the district court relied upon retribution and deterrence in imposing the sentence. Because these goals, by themselves, are sufficient to justify the sentence, and because rehabilitation was properly considered, we find no abuse of discretion in the sentencing.

■ This brings us to the second issue on appeal. Waddell insists that the district judge erred by not referring to the sentencing guidelines and by not articulating why such a lengthy sentence was needed to deter others. However, it is well established that a sentencing judge is not required to check off or recite the sentencing guidelines during sentencing. *State v. Morris,* 116 Idaho 16, 773 P.2d 284 (Ct.App. 1989). Nor is a judge required to give his reasons for imposing a sentence. *State v. Nield,* 106 Idaho 665, 682 P.2d 618 (1984). Therefore, we find no abuse of discretion.

■ Waddell next contends that his sentence is excessive because the district judge failed to follow the sentencing recommendation of the prosecuting attorney. In this case, an experienced prosecutor, with a reputation for toughness, recommended a sentence requiring a minimum of fifteen years confinement. The judge imposed a twenty-year minimum. According to Waddell, this constitutes an abuse of discretion. We disagree. It is well established that the prosecuting attorney's rec-

ommendations are just that, mere recommendations. *State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989). The judge is free to exercise his own judgment in carrying out, his sentence responsibilities. We hold there was no abuse of discretion.

■ We now turn to the last issue on appeal. Waddell asserts that the judge erred in considering letters from the victim's family and testimony from the victim's mother before making his sentencing decision. Waddell argues that because this case began as a capital offense, the rationale behind *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) should be applied. The United States Supreme Court in *Booth* held that the inclusion of a victim impact statement (VIS) during sentencing violates the eighth amendment to the United States Constitution. In *Booth,* a death penalty case, the VIS portion of the presentence report described the personal characteristics of the victims and the emotional impact of the crimes on the family. It also included the family members' opinions and characterizations of the crimes and the defendant. The Court concluded that "this information is irrelevant to a capital sentencing decision" and that it "creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Id.* at 502–03, 107 S.Ct. at 2532–33.

The *Booth* rationale was adopted by our Supreme Court in *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989), despite the fact that sentencing decisions in Idaho involving the death penalty are imposed by a judge and not a jury. Our Supreme Court has limited the application of the *Booth* decision to death penalty cases. *State v. Searcy,* 118 Idaho 632, 798 P.2d 914 (1990). Here, it was not improper for the district judge to consider letters from the victim's family and testimony from the victim's mother prior to sentencing Waddell.

The judgment of conviction and the sentence are affirmed.

WALTERS, C.J., and SILAK, J., concur.