835 P.2d 1355

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Norman David SPRINGER, Defendant–Appellant.**

**No. 19632.**

Court of Appeals of Idaho.

July 31, 1992.

Van G. Bishop, Nampa, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

After entering into a plea agreement with the state, Norman David Springer pled guilty to two counts of sexual abuse of a child under sixteen, I.C. § 18–1506. The court sentenced him to concurrent unified sentences of six years, with a three-year determinate period of confinement. Springer did not appeal the sentence but moved under I.C.R. 35 to have his sentence reduced. He argued primarily that because of his intellectual and psychological problems incarceration without treatment would not serve any productive purpose. The court denied the motion and Springer appeals. We affirm.

The facts in this case may be stated briefly. Springer sexually abused two girls, ages 10 and 11, who were spending the night in an apartment temporarily shared by Springer and the father of one of the girls. On the night of the incident in late August, 1990, Springer had been drinking beer and ingesting cocaine for a few days, and had not slept in five days. He accosted the girls when they were asleep and when they woke up, he stopped, left the room, and then left the apartment. He

walked around outside for a while, then returned to the apartment and went to sleep. The girls quickly reported the incident, and Springer was soon arrested.

▆▆▆ Our standard of review is well established. A Rule 35 motion is essentially a plea for leniency which may be granted if the original sentence was unduly severe. *State v. Morrison*, 119 Idaho 229, 804 P.2d 1360 (Ct.App.1991). Such a motion is addressed to the sound discretion of the sentencing court. *State v. Swan*, 113 Idaho 859, 748 P.2d 1389 (Ct.App.1988). The court is under no obligation to modify a legally imposed sentence. *State v. Vega*, 113 Idaho 756, 747 P.2d 778 (Ct.App.1987). The factors considered by the district court in determining whether to reduce a sentence are the same as those considered in evaluating whether the original sentence was too severe, that is, whether the sentence serves the goals of protecting society, deterrence, rehabilitation and punishment. *State v. Snapp*, 113 Idaho 350, 743 P.2d 1003 (Ct.App.1987); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). If the sentence is not excessive when pronounced, the defendant must show that it is excessive in view of new or additional information presented with his motion to reduce. *State v. Morrison, supra.* If he fails to make this showing, we cannot say that denial of the motion represents an abuse of discretion. In our review, this Court will consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Matthews*, 118 Idaho 659, 798 P.2d 941 (Ct.App.1990).

▆▆▆ Springer's argument is that his limited mental capacity, the lack of psychological treatment in prison, and the lack of his ability to benefit from incarceration mean he is just being "warehoused," and without a different approach he will be just as likely to re-offend when he is released. His argument can be divided into several parts. First, he asserts that the court erred when it did not order a new psychological report. Second, he asserts that the court focused on deterrence through incarceration and did not consider alternatives

to imprisonment, even in the face of psychological reports from 1985 stating that Springer would be deterred only through counseling. We address each assertion in turn.

Springer's presentence report revealed that he was convicted of lewd conduct with a minor in 1985. That conviction also carried its own presentence report and psychological evaluation. Reviewing all of these materials, the court learned that Springer grew up in a troubled home. His mother and father divorced when he was very young. Apparently, his father was physically violent with Springer and his mother, to the point that his father once broke one of Springer's legs, sending him to the hospital. He has moved about thirty times since he was born in 1965. When his mother remarried, he lived with her and his step-father, with whom he had a good relationship until he was arrested for molesting his sister in 1985. Apparently, Springer had been making sexual advances to two of his sisters for two years before the charged incident was reported. His mother and step-father reported the incident when they discovered they could not afford counseling for Springer, in the hope the state could intervene. The state's intervention led to a five-year prison sentence for Springer. Eventually he was released on parole, which he later violated.

Springer reported that he was sexually molested by an aunt and a neighbor's sister when he was young. At school, he struggled through remedial classes until he dropped out of the ninth grade. He has severe difficulty reading and writing, largely because he is dyslexic and mildly retarded. He worked on his GED while in prison in 1985 at Northern Idaho Correctional Institution at Cottonwood, but did not complete the program. He has tried entering the work force, but has lost jobs because his employers have been disappointed with his irresponsible behavior. He attempted to join the military but did not qualify. He was placed in the Job Corps in Portland, Oregon, but failed to complete the course. He has, however, found some satisfaction working with cattle and has expressed an interest in dairy work.

The 1985 presentence report included a psychological evaluation. Dr. Dwight Mowry, the psychologist who performed the evaluation, wrote that Springer appears to be mildly mentally retarded. He is capable of understanding right and wrong at a concrete level but does not fully understand the consequences of his behavior. He works well at restricted tasks, but it is unlikely that he functions well in other, more socially-oriented situations. The Doctor also stated that:

It appears that he is unable to develop close relationships with females and probably is taking sexual liberties to simply satisfy his own biological functioning. He has been unable to anticipate the consequences for his sexual behavior on his sister or any other person. The level of impairment in this area would have to be considered moderate to severe.

\*       \*       \*       \*       \*       \*

[T]reatment for Mr. Springer is going to be difficult to find. . . . He is an individual who will probably need to be controlled in some external ways in order to keep him from further sexual deviation. Any treatment program would have to consider the general principles of behavior modification which have proven to be relatively successful with individuals who are retarded. This examiner is not currently aware of any program in the State of Idaho which would address the sexual problems with mental retardation, but there are numerous programs for sexual abuse/molestation.

In 1986, the staff psychologist for the Department of Correction performed an evaluation of Springer at the request of the Commission of Pardons and Parole. The psychologist echoed the observations of Dr. Mowry and added that:

[Springer] has little insight or understanding of his antisocial sexual conduct in spite of his attendance in sexual offender groups at NICI. He is not psychotic or mentally ill at this time. Both long and short-term memory is [sic] im-

paired. He has marked difficulty with reading skills. Due to these and other limited capabilities there is a risk that Mr. Springer will not benefit from incarceration treatment programs but would best benefit from a community based program to assist him in developing better relationships with females and to treatment for his sexual dysfunctions.... Though he seems motivated now for continued treatment, he quickly loses sight of long-term goals and the persistence to follow through, necessitating in a guarded prognosis for treatment success.

His parole progress report from January, 1987, stated "He is not going to change, no matter how long we keep him." The report also stated that Springer was not as dangerous as some and possibly could be controlled in a community setting. The indications were that potential victims would be minor females he personally knows or is around for a long period of time. The report stated that "Continuing with therapy will not improve his insight or be of much benefit but it will help monitor his activities and warn his parole officer of dangerous situations."

Regarding Springer's current charges, the court ordered a progress report from the Department of Correction. The report stated that Springer was getting along well with staff and other inmates. His school work was acceptable. He told the person preparing the report that he wanted his sentence reduced because he wanted to get straightened out, that he was finished molesting young girls and that he wanted a normal life and did not want to hurt anybody anymore. He claimed to understand the damage he inflicted on his victims and expressed remorse. However, the report observed that Springer's history "indicates a propensity for sexually inappropriate behavior and nothing has happened to indicate he could abstain from further behavior of this kind." Although his ability to live in a restricted environment was good, his ability to function appropriately in a free society is problematic.

Springer's argument regarding the court's failure to order a psychological evaluation goes to the core of his motion. His mental abilities are limited in such a way that incarceration without treatment will appear to have little rehabilitative affect on him. Still, we cannot say that failing to order an evaluation in this case was error. We point out that whether to order a psychological evaluation is a decision left to the court's discretion. *State v. Sabin,* 120 Idaho 780, 820 P.2d 375 (Ct. App.1991); I.C.R. 32; I.C. § 19–2601(4). The court had read the 1985 evaluation, and nothing had changed since that time except Springer professed remorse for the harm he caused his victims. Springer himself apprised the court of this change. Although the presentence investigator recommended a psychological evaluation be performed, as well as an alcohol and drug abuse evaluation, she also recommended incarceration over probation due to Springer's status as a repeat offender.

Springer cites several Idaho cases which he claims mandate a psychological evaluation in cases in which an evaluation or report provided inadequate or "sketchy" information or did not delineate future prospects of the defendant or rehabilitation alternatives. *See State v. French,* 95 Idaho 853, 522 P.2d 61 (1974); *State v. Gowin,* 97 Idaho 146, 540 P.2d 808 (1975), *appeal after remand,* 99 Idaho 195, 579 P.2d 692 (1978). These cases are not dispositive. Here, the court was presented with information sufficient to draw a complete psychological portrait of Springer. His future prospects were sufficiently developed, as were alternatives to incarceration—which are primarily limited to probation with extensive treatment. In this case, treatment for Springer will be hard to find in Idaho and the prognosis for success will be guarded.

Springer also argues that the court wrongly focused on deterrence as a sentencing goal while the information the court relied on established that Springer would not be deterred through mere incarceration. He also argues that punishment and retribution played significant roles in the court's decision. Again, all of these

are appropriate sentencing goals. When denying the motion the court found one of its overriding considerations to be "the protection of society, especially young children." The court concluded that Springer had not presented any new information to show that the original sentence was unreasonable or excessive. An important aspect of our review of Springer's motion is that the same information he presented to the district court he has presented to this Court. None of the information submitted with the motion was new or shed a different light on the situation. Everything, except the progress report, was known by the district court when sentence was imposed.

At sentencing, the court stated that because of Springer's record and the circumstances of the present offense, it had few alternatives but to sentence Springer to incarceration. In this context, the court seems to be expressing its opinion that alternatives such as probation did not fit the crime. At the hearing on the Rule 35 motion, the court acknowledged counseling was not available and concluded there was "nothing that the Court can do to order counseling," because the legislature had yet to fund such a program, even though prison officials had designed one and requested funding.

■ The unfortunate reality is that counseling programs for mentally impaired sexual offenders have not been implemented in this state. Even so, the lack of their existence does not mandate that those who have committed serious crimes should not be incarcerated for their offense. Further, the lack of rehabilitative treatment and the arguable negative impact a sentence without treatment may have on the defendant does not render the sentence unreasonable. *State v. Morrison,* 119 Idaho 229, 804 P.2d 1360 (Ct.App.1991). The court is vested with the discretion to impose a sentence that is appropriate to the crime. Although deterrence and rehabilitation are valid sentencing objectives, they are not the sole objectives. Equally as valid is the goal of punishment. Further, the primary sentencing objective is the protection of the good order of society, which was relied on by the court when denying Springer's motion.

For the reasons already stated, we find no abuse of discretion in the court's denial of Springer's Rule 35 motion. Therefore, we affirm the order of the district court.

SWANSTROM and SILAK, JJ., concur.