991 P.2d 870

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Doris L. THOMAS, Defendant–Appellant.**

**No. 24926.**

Court of Appeals of Idaho.

Dec. 13, 1999.

---

Gordon Law Offices, Boise, for appellant. Doreen C. Guenther argued.

Hon. Alan G. Lance, Attorney General; Myrna A.I. Stahmann, Deputy Attorney General, Boise, for respondent. Myrna A.I. Stahmann argued.

SCHWARTZMAN, Judge.

Doris L. Thomas pled guilty to one count of first degree murder, I.C. § 18–4001, 4003, and one count of grand theft by unauthorized control, I.C. §§ 18–2403(3), 18–2407(1)(b). The district court sentenced the

fifty-five year old Thomas to consecutive sentences of fixed life for the first degree murder conviction and fourteen years fixed for the grand theft conviction.[1] Thomas appeals, asserting that her sentence is cruel and unusual and the district court abused its discretion by imposing an excessive sentence. Thomas further asserts that the district court abused its discretion by denying her Idaho Criminal Rule 35 motion for reconsideration without conducting a hearing. We affirm.

# I.

## FACTS AND PROCEDURE

At the preliminary and sentencing hearings, two very different versions of how the murder occurred were presented. Thomas claimed that Leo Dvells, her cohabitant boyfriend who was seventy-three years old when he was killed in 1986, sexually and physically abused her over the course of their eight-year relationship. Thomas asserted that Dvells often indiscriminately solicited men to have sexual relations with her and that Dvells forced her to engage in these humiliating acts, in hotels, for his pleasure. Thomas claimed that on the night of the murder, Dvells solicited a man for sexual acts to take place in their home rather than in a hotel. Thomas claimed she attempted to leave, but was restrained by Dvells. She then, without thinking, picked up a nearby baseball bat and hit him in the head, killing him. She claimed that she did not want to kill him, but just wanted to leave.

The state's version of the events surrounding the murder differ significantly. The state presented testimonial and physical evidence that Thomas and her son, Eric, consciously decided to kill Dvells for his social security income, and that Dvells was feeble and ailing. The state's witnesses testified that Eric killed Dvells as he slept, at Thomas' request. The state directly contradicted Thomas' version of the murder and her claim that she killed Dvells because of the abuse he perpetrated upon her.

The parties agree that, after the murder, Thomas and her son took Dvells' body from the home in Boise and buried it near McCall, spreading coffee grounds over the corpse. They returned home and cleaned up the blood. Thomas received and spent Dvells' social security checks for the next eleven years. Thomas also spent Dvells' pension checks for several years until she could no longer supply a notarized signature.

Eric's former girlfriend, R. K., notified the police in 1997 about Dvells' disappearance and Eric's admission to her that he had killed Dvells. Probable cause to arrest Thomas arose after the state wiretapped Thomas' phone and had R.K. call Thomas to confront her about the crime. Thomas thereafter called Eric and told him that she had several options for what they could do, including "permanently silencing" R. K.

On June 23, 1997, Thomas was arrested and charged with one count of accessory after the fact to murder, I.C. §§ 18–205, 18–4001, and sixty counts of grand theft by unauthorized control, I.C. §§ 18–2403(3), 18–2407(1)(b). The state then filed an amended complaint on July 1 and substituted one count of murder in the first degree, I.C. §§ 18–4001–4003, for the previous accessory charge.

Thomas initially pled not guilty, but changed her plea as a result of a plea bargain with the state. Thomas agreed to plead guilty to first degree murder in exchange for the state's promise to refrain from seeking the death penalty. As a part of this same bargain, Thomas agreed to waive any appeal regarding pre-plea issues and to plead guilty to one consolidated charge of grand theft.

The court imposed a fixed life sentence for the murder and a consecutive fixed fourteen-year sentence for the grand theft. The court thereafter amended the sentence to an indeterminate period not to exceed life, explaining that it could not sentence Thomas to a fixed life term because the crime was committed prior to February 1, 1987. The state filed a motion to amend the sentence

---

1. The state admitted at oral argument that a sentence ordered to run consecutive to a fixed life sentence is an exercise in futility and mere symbolism. *See State v. Searcy*, 124 Idaho 107, 114, 856 P.2d 897, 904 (Ct.App.1993) (Swanstrom, J., concurring).

back to its original form, asserting that the court did have the authority to fix a life sentence under I.C. § 19–2513A as it existed in 1986.[2] The court thereafter vacated the amended judgment and reinstated the original fixed life sentence imposed on Thomas.

Thomas filed her notice of appeal on August 24, 1998. On November 13, Thomas filed a Rule 35 motion to reconsider the sentence based on a psychological evaluation opining that Thomas was abused by Dvells. Without conducting a hearing, the court denied the motion, finding that Thomas had not shown the original sentence was unduly severe. The court further explained its decision by stating "[Thomas] and her son intentionally killed a feeble, old man in order to obtain his social security and retirement income. For that she received a fixed life sentence."

## II.

### THOMAS' FIXED LIFE SENTENCE DOES NOT AMOUNT TO CRUEL AND UNUSUAL PUNISHMENT

#### A. Standard of Review

▆▆▆ When an appellant claims his or her sentence constitutes cruel and unusual punishment, an appellate court is required to make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence gives rise to an inference of gross disproportionality. *State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992). This standard is equivalent to the standard under the Idaho Constitution stated in *State v. Evans*, 73 Idaho 50, 245 P.2d 788 (1952), which focuses on whether the punishment is "out of proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable [peo-

ple]." *Brown*, 121 Idaho at 394, 825 P.2d at 491. Only if an inference of such disproportionality is found, must we then conduct a proportionality analysis by comparing the instant sentence with those imposed for similar offenses. *Id.* While the state asserts that it is unclear which sentence Thomas challenges as cruel and unusual, we think it is clear that Thomas is challenging the fixed life term for her first degree murder conviction, and not her sentence for the grand theft conviction.[3] Our initial inquiry then, is whether Thomas' sentence of fixed life causes an inference of "gross disproportionality" when compared to her crime.

▆▆▆ The burden of demonstrating that a sentence is cruel and unusual is on the person asserting the constitutional violation. *State v. Clay*, 124 Idaho 329, 859 P.2d 365 (Ct.App.1993). As stated numerous times before, the credibility of witnesses and the weight of testimony are matters entrusted to the trial court as the trier of fact. *Whiteley v. State*, 131 Idaho 323, 326, 955 P.2d 1102, 1105 (1998). Factual findings will not be set aside on appeal unless there is a showing that they are clearly erroneous. Findings are clearly erroneous only when unsupported by substantial and competent evidence in the record. *Id.* There has been no such showing by Thomas. Therefore, based on the facts found by the district court, we must determine if Thomas' sentence was grossly disproportionate to her crime.

#### B. Discussion

The record shows that the district court did not accept Thomas' version of the facts, but rather believed the state's version—that Thomas planned the murder of Dvells, carried out by her son, with greed as her motive.[4] The court found the statements made by Thomas and her son to their acquain-

---

2. At the time Thomas committed the murder, I.C. 19–2513, the Unified Sentencing Act, was not in effect. Therefore, the district court's choice of sentence was limited to either a fixed or indeterminate life sentence. *State v. Hoffman*, 111 Idaho 966, 967, 729 P.2d 441, 442 (Ct.App.1986).

3. We are not asked to review the propriety of a sentence ordered to run consecutive to a fixed life sentence.

4. Thomas was permitted to present testimonial evidence of Dvells' abusive nature. The district court also reviewed a psychological evaluation of Thomas, which indicated that Dvells was abusive toward her. The district court, however, did not give much credence to the report. This is akin to *State v. Campbell*, 123 Idaho 922, 854 P.2d 265 (Ct.App.1993), where the defendant claimed that the district court did not give "due weight" to a psychological evaluation. Like *Campbell*, the district court here did not specifically discuss the

tances prior to criminal charges being filed were more credible and representative of what actually transpired on that night. It is from this posture then, that we must decide if a sentence of fixed life is grossly disproportionate to Thomas' crime.

Thomas has not provided any support for her assertion that a fixed life sentence in this case amounts to cruel and unusual punishment, other than to re-assert her version of the events surrounding the murder—statements the district court did not find to be credible. We conclude that a fixed term of life is not grossly disproportionate to Thomas' crime for the following reasons.

Thomas and her son premeditated the heartless and greed-motivated murder of her ailing seventy-three year old boyfriend. Thomas and her son put Dvells' body in her vehicle's trunk under stealth of night, drove the corpse north to a secluded location and buried it. Thomas returned home and attempted, unsuccessfully, to rid the murder scene of all blood. For the next eleven years, Thomas reaped the benefits of this murder, as Dvells' social security and pension checks arrived monthly. The district court correctly summarized this crime as merely "the intentional taking of a human life ... for monetary gain." Thomas' sentence is not grossly disproportionate to her crime and does not shock the conscience of reasonable people. Consequently, it is not necessary to conduct any further proportionality review. *Brown*, 121 Idaho at 394, 825 P.2d at 491. Thomas' imprisonment for the rest of her natural life is not cruel and unusual punishment in violation of the Idaho or United States Constitutions.

### III.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY IMPOSING AN EXCESSIVE SENTENCE

#### A. Standard of Review

Where a sentence is within the statutory limits, the appellant bears the bur-

den of demonstrating that it is a clear abuse of discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992).

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Broadhead*, 120 Idaho at 145, 814 P.2d at 405, *quoting State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez*, 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

A sentence of fixed life imprisonment, however, requires an additional inquiry on our part. In *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct.App.1988), this court expressed the view that:

[A] fixed life sentence may be deemed reasonable if the offense is so egregious

psychological report at sentencing, but did state that it had read the report. As in *Campbell*, the defendant's assertion that the court ignored the report is not supported by the record. The dis-

trict court simply did not believe that Thomas killed Dvells in an attempt to avoid an abusive situation.

that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society. Unfortunately, in making these determinations, a judge has complete information only in regard to retribution and deterrence, which are based on the nature of the offense. The character of the offender is not completely known because it may evolve over time. The judge must attempt to predict the defendant's future response to rehabilitative programs and the degree of risk [she] might pose to society if eventually released.

. . . .

[A] fixed life term, with its rigid preclusion of parole or good time, should be regarded as a sentence requiring a high degree of certainty—certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never . . . could be safely released.

■■■ At the time the murder was committed, the maximum penalty for first degree murder was death. Thomas' minimum period of confinement is the rest of her natural life. Thomas was fifty-five years old at the time of sentencing. Accordingly, Thomas must demonstrate that this lifelong period was an abuse of the district court's discretion. As was previously stated, we must adopt the factual findings of the district court in this case because there has been no showing by Thomas that those factual findings are clearly erroneous.

Thomas engaged her teenage son to kill Dvells, a fragile, old and chronically ill man, while he slept in his bedroom. Eric, by his own account, crept into Dvells bedroom and bludgeoned him with a baseball bat or crowbar. Thomas and Eric then wrapped Dvells' body in blankets and waited until the early hours of the morning before placing Dvells' body in the trunk of her car. They drove north to McCall and buried Dvells in the frozen ground after they spread coffee grounds over his corpse. They returned home and cleaned up the blood. For the next eleven years, Dvells' social security checks were deposited into a joint account he had with Thomas. Thomas also cashed Dvells' pension checks for more than five years, until she could no longer supply a notarized signature. Thomas collected over $71,000 of income meant for Dvells. Additionally, when Thomas found out that R.K. knew of the murder and was threatening to tell the police, Thomas intimated that she and Eric could murder her to "silence her permanently."

The district court was aware at sentencing that Thomas had a near non-existent criminal record and had not committed any violent crimes in the twelve years since the murder. However, the court emphasized its desire to avoid depreciating the seriousness of the instant crime. The court stated that "as a society we must place a value on human life and we must reflect that value in sentencing those who have committed the murder." The district court determined that any lesser sentence would depreciate the gravity of this offense—the intentional taking of human life for monetary gain. In this way, the district court focused on the sentencing goals of retribution and deterrence. The court determined that satisfactory accomplishment of these goals necessitated the harsh sentence imposed on Thomas.

■■■ Thomas claims that the district court was required to consider the primary sentencing goal of protection of society and that if the district court had done so, it would have come to the conclusion that Thomas was not a danger to society. This analysis is incorrect because a sentence need not serve all the goals of sentencing. *State v. Waddell,* 119 Idaho 238, 241, 804 P.2d 1369, 1372 (Ct. App.1991). The goals of retribution and deterrence by themselves are sufficient to justify a sentence imposed. Furthermore, a court is not required to recite or check off the sentencing guidelines during sentencing, nor is it even required to give its reasons for imposing the sentence. *Id.*

The gravity of the offense in this case, a brutal murder, planned and committed out of greed, is sufficiently egregious to justify the exceptionally severe measure of retribution and deterrence imposed by the district

court.[5] Accordingly, we conclude that the sentence of fixed life is reasonable on the facts of this case and does not amount to an abuse of discretion.

## IV.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING THOMAS' RULE 35 MOTION WITHOUT CONDUCTING A HEARING TO FURTHER CONSIDER MITIGATING FACTORS

### A. Standard of Review

A motion to reduce a sentence pursuant to Rule 35 is essentially a plea for leniency and a decision on such a motion is vested within the sound discretion of the trial court. *State v. Cottrell*, 132 Idaho 181, 187, 968 P.2d 1090, 1096 (Ct.App.1998); *State v. Hernandez*, 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991). The decision whether to conduct a hearing on a Rule 35 motion to reduce a legally imposed sentence is also directed to the sound discretion of the district court. *State v. Peterson*, 126 Idaho 522, 525, 887 P.2d 67, 70 (Ct.App.1994). A trial court abuses its discretion in this manner only when it unduly limits information considered in deciding the motion. *State v. James*, 112 Idaho 239, 242, 731 P.2d 234, 237 (Ct.App.1986).

When we review a denial of a Rule 35 motion, we determine whether the trial court abused its discretion by applying the standards used to evaluate the reasonableness of the original sentence. *State v. Shiloff*, 125 Idaho 104, 107, 867 P.2d 978, 981 (1994); *Cottrell*, 132 Idaho at 187, 968 P.2d at 1096. In cases such as this, where the original sentence was reasonable and not excessive, the defendant must show that the sentence is now excessive in light of new or additional information included with the Rule 35 motion. *Cottrell*, 132 Idaho at 187, 968 P.2d at 1096; *State v. Springer*, 122 Idaho 544, 545, 835 P.2d 1355, 1356 (Ct.App.1992). If the defendant does not make such a show-

ing, then we are unable to say that the denial of the Rule 35 motion was an abuse of discretion. *Id.*

### B. Discussion

Thomas claims that the district court ignored the psychologist's report at sentencing, citing a lack of information regarding the psychological tests. Thomas then asserts that, when the raw data was presented in the Rule 35 motion and the psychologist was prepared to testify, the district court declined to hold a hearing, thereby abusing its discretion.

The district court, however, had already considered at sentencing the psychological evaluation Thomas submitted with her Rule 35 motion. The district court explained its reason for denying the Rule 35 motion by saying:

> The Defendant ... has not presented any information which convinces the Court that the Defendant's sentence should be reduced .... The opinions of Dr. Maiuro were ... considered by the Court at sentencing. The Court simply did not find those opinions persuasive ... the Court does not find persuasive the version that the Defendant killed Mr. Dvells in self-defense or to keep from being sexually abused.

A review of the record establishes that the court did not "completely disregard" the psychological evaluation as Thomas alleges, i.e. the court did not unduly limit the information considered in deciding the motion. The district court rejected Thomas' account of the murder of Dvells and it had already considered the psychologist's report at sentencing. The court found the new information unpersuasive and so chose not to conduct a hearing. Because Thomas' fixed life sentence was not originally excessive and she presented no new evidence with her motion which compels a different result, we are unable to say the district court abused its discretion in refusing to hold a hearing and ultimately denying Thomas' Rule 35 motion.

---

5. We have previously upheld fixed life sentences as a proper exercise of sentencing discretion where egregious circumstances have arisen. *See,*

*e.g., State v. Tribe*, 126 Idaho 610, 888 P.2d 389 (Ct.App.1994).

## V.

## CONCLUSION

For the reasons stated above, we hold that the fixed life sentence imposed on Thomas is neither cruel and unusual punishment, nor excessive. Additionally, we conclude that the district court did not abuse its discretion by refusing to hold a hearing on Thomas' Rule 35 motion and in denying her motion. We therefore affirm Thomas' fixed life sentence.

Chief Judge PERRY, and Judge LANSING, concur.